## Family Finance Corporation v. Scott

*Alexander C. Sherrard* and *Campbell, Casteel & Thomas*, for plaintiff.

*Michael Hahalyak*, for defendants.

588

Before Smart, Weiss and Van der Voort, JJ.

VAN DER VOORT, J., March 10, 1961.—This case comes before the court upon defendants' petition for a rule to open a deficiency judgment entered by confession upon a secured note after a sale of the security.

*Facts*

On July 8, 1957, defendants purchased a used 1954 Plymouth automobile for the sum of $750. They paid $150 in advance and signed a judgment note in favor of plaintiff, Family Finance Corporation of East Liberty, for the balance of $600. The note was secured by a security agreement covering the automobile purchased.

Defendants became delinquent in their payments, and plaintiff repossessed the said automobile on August 7, 1958. At that time, defendants had reduced the unpaid balance to $361.

Plaintiff resold the automobile for $205. From this sum realized at the sale, plaintiff first applied $10 to towing, $16 to storage, $26.77 to interest, and then applied the balance of $152.23 toward the unpaid principal. Plaintiff then caused a judgment in the amount of $219.30 to be entered in this court at the above number and term, against defendants by virtue of a warrant of attorney contained in the note, representing a principal balance of $208.89 and interest of $10.41. On that same date, plaintiff caused a writ of execution to issue on the judgment and instructed the sheriff to levy upon defendants' personal property.

Subsequent to the levy, defendants filed this petition for a rule to show cause why the judgment should not be opened and obtained a stay of execution pending disposition of this rule.

*Discussion*

An action to open a judgment entered upon a warrant of attorney is an equitable proceeding governed

by equitable principles and addressed to the sound discretion of the court: Budget Charge Accounts, Inc., v. Mullaney, 187 Pa. Superior Ct. 190. Petitioner in this case alleges that the automobile was resold at an "unreasonable and arbitrary figure." This, in effect, is an allegation that the disposition of the collateral was not commercially reasonable within the provisions of the Uniform Commercial Code, Act of April 6, 1953, P. L. 3, as amended (9-504); 12A PS §9-504. The allegation of petitioner might be construed to claim that the sale of the collateral was not within the authorization given to plaintiff under its power to repossess and sell.

In support of this contention, defendants rely upon the automobile values quoted in a publication put out by National Market Reports, Inc., and circulated among automobile dealers known as "the Redbook" or sometimes as "the Bluebook." This publication reports a retail value of $615 and a wholesale value of $435 for an automobile of the same make and model as defendants' 1954 Plymouth at the time of the repossession. Since the automobile was sold at less than half the listed wholesale value, defendants believe that this alone would tend to show that the sale was not commercially reasonable.

The term "commercially reasonable" is not clearly defined in the Uniform Commercial Code of April 6, 1953, as amended. However, article 9-507, subsection (2), which deals with the secured party's liability for failure to sell in a commercially reasonable manner reads:

"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual

manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner . . .": 12A PS §9-507(2).

At the argument, it appeared that the judgment creditor did not sell in any recognized market nor did it sell at the current price in the market, according to the quoted Redbook figures. Therefore, the question would seem to be whether it has otherwise sold in conformity with reasonable commercial practices among dealers in this type of property.

Plaintiff alleges having received three written bids for this automobile, in the amounts of $135, $175 and $200 and one oral bid. Plaintiff then alleges a sale for $205 or $5 in excess of the highest written bid received.

The court understands the problems encountered by finance companies in disposing of repossessed vehicles. They must act speedily to prevent the value of the items from being lost in storage and maintenance charges. Nevertheless, where there is such a wide discrepancy between at least one recognized value in the trade and the sale price and when the collateral is sold at less than half such recognized wholesale value, there appears to be equitable grounds for opening the deficiency judgment.

The three written bids alleged to have been received by plaintiff, copies of which are attached to plaintiff's answer to the petition, are on billheads, bearing the names of three dealers. They are not dated and contain only the briefest reference to an automobile of the same make and model as that resold.

The three bids on their face indicate that the condition of the automobile was not given any consideration, whether such condition may have been good or bad.

The bids do not in any way precisely identify the automobile being bid upon. While it is appreciated that speed is essential in the transaction of all business, if bids are to be relied upon, some consideration must be given to the precise collateral to be sold and the condition of the collateral where such collateral is an automobile. In view of defendants' challenge of the sale, there appear to be equitable grounds to give them the right to prove that the sale was not made in a commercially reasonable manner.

The Motor Vehicle Sales Finance Act of June 28, 1947, P. L. 1110, as amended by the Act of May 2, 1949, P. L. 812, 69 PS §601, et seq., makes an express provision for the protection of the debtor against whom a deficiency judgment is sought to be enforced. This provision appears in section 27 of the 1947 Act, 9 PS §627:

". . . Provided, That the buyer may have the reasonable value of the motor vehicle at the time of resale, determined in any action or proceeding brought by the seller or holder to recover the deficiency, the resale price being prima facie, but not conclusive evidence, of such reasonable value and the reasonable value, as determined, or the resale price, whichever shall be higher, shall be credited to the buyer on account of his indebtedness. . . ."

The filing of the judgment in this case and the issuance of a writ of execution thereon is a proceeding brought by the holder of the note to recover the deficiency and the buyer, the debtor, may take this opportunity of having the reasonable value of the motor vehicle at the time of the resale determined, where said buyer, the debtor, has alleged sufficient facts indicating that if he, or they, proved them, the reasonable value of the repossessed motor vehicle was substantially higher than the price obtained at the time of its resale.

Under these circumstances, we think that defendants should have an opportunity to have this whole transaction examined to ascertain whether or not plaintiff resold the automobile in conformity with reasonable commercial practices and at its reasonable value.

### Order of Court

And now, to wit, March 10, 1961, defendants' rule to show cause why the judgment entered at the above number and term should not be opened and defendants let into a defense is made absolute. The case is hereby ordered to be set down for hearing, limited to the questions of the reasonable value of the motor vehicle collateral at the time of resale and balance now due and owing by defendants to plaintiff; execution to be stayed pending final disposition.